LUELLA S. ROOT, Respondent, *v.* HARRIET E. WADHAMS,
Appellant.

A. owned a lot of land, upon which was a spring of water; he gave to B.,
the owner of an adjoining lot, in consideration of a small annual rent, a
parol license, revocable at his pleasure, to lay a pipe underground from
the spring to conduct the water therefrom to the house of the latter. B.
laid the pipe to his house where it discharged into an open tub.
C. owned a lot, separated about fourteen rods from that of A., the lot
of B. intervening. With the consent of A. and B., C. laid a pipe from his
house to the tub on the premises of B. and thus took the surplus water
therefrom for the use of his house. A. thereafter purchased C.'s lot, and
his tenant, by his direction, connected the two pipes at the tub, which
was thereafter supplied by a branch pipe. A. sold and conveyed the C.-
lot "with the appurtenances thereto belonging;" the deed making no
mention of the spring or of the water therefrom. Through various mesne
conveyances, containing similar descriptions, plaintiff acquired title
to said lot. A. continued to own the lot upon which was the spring
until his death; his executors thereafter sold and conveyed the same to
defendant by deed, describing it by metes and bounds, and containing no
reservation or mention of any right in any other person to the spring or
the water from the spring. Defendant, after the conveyance to her, dis-
connected the pipe from the spring. In an action to restrain such inter-
ference with the flow of water through the pipe and to enforce plaintiff's
alleged right to a supply of water from the spring, it appeared that, when
defendant was negotiating for the purchase, R., who then owned plaintiff's
lot, informed defendant that no person, other than the executors, owned
any right in or to the waters of the spring or to take water therefrom,
and she relied on such statement in making the purchase. The trial
court found that the water from the spring was necessary for the use and
enjoyment of plaintiff's premises, and with it they were of much more
value than without, but that the premises could have been supplied with
water by means of a well on the premises; defendant offered to show on the
trial that such a well could have been dug at a small cost. *Held*, that
the action was not maintainable; that the right to the use of the water did
not pass as an appurtenance under the deed from A. of the plaintiff's lot;
and that there was no implied easement giving such a right.

By the word "appurtenance" nothing passes except such incorporeal ease-
ments, rights or privileges as are strictly necessary and essential to the
proper enjoyment of the estate granted; a mere convenience is not
sufficient to create such a right or easement.

*Lampman* v. *Milks* (21 N. Y. 505); *Curtiss* v. *Ayrault* (47 N. Y. 73)
distinguished.

*Root* v. *Wadhams* (35 Hun, 57) reversed.

(Argued October 20, 1887, decided November 29, 1887.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made January 13, 1885, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term. (Reported below, 35 Hun, 57.)

This action was brought to restrain the defendant from removing or interfering with a pipe which formerly conducted water from a spring on defendant's premises, across an intervening lot to the premises of plaintiff, and from in any manner interfering with the flow of water through said pipe.

The material facts are stated in the opinion.

*George W. Ray* for appellant. The conveyance by Andrew Bradbury to Martin M. Rowley did not create or grant any right or easement in the spring, or in the waters of the same, or for a supply of plaintiff's premises with water from the said spring. (*Greene* v. *Collins*, 86 N. Y. 246; 20 Hun, 474; *Adams* v. *Conover*, 87 N. Y. 422; *Brace* v. *Yale*, 4 Allen, 393; *Philbrick* v. *Ewing*, 97 Mass. 133; 3 Willard on R. Prop. 514, § 4; Washb. Easements and Serv. 52; id. 41, § 21; *Wiseman* v. *Lucksinger* 84 N. Y. 31; *Cronkhite* v. *Cronkhite*, 94 id. 323; *King* v. *Mayor, etc.*, 102 id. 171.) Such a right, or easement, cannot be created, or granted by implication, unless the right claimed to be granted or conveyed as appurtenant exists in fact as a matter of legal right. (*Greene* v. *Collins*, 86 N. Y. 246, 252; *Adams* v. *Conover*, 87 id. 422; *King* v. *Mayor, etc.*, 102 id. 176; Willard on R. E. 514; § 4; *Parsons* v. *Johnson*, 68 N. Y. 68.) A parol license is not the subject of a grant nor can it be an appurtenant to land. It is not an easement in land, nor can it ripen into an easement. (2 Wash. R. Prop. 303; *Wiseman* v. *Lucksinger*, 84 N. Y. 31; *Cronkhite* v. *Cronkhite*, 94 id. 323; 3 R. S. [5th ed.] 2195, § 140; *Greene* v. *Collins*, 86 N. Y. 246.) This parol license to lay pipe, etc., given by the intervening owner, was not an easement; nor was the parol license given by Bradbury. (*Wiseman* v. *Lucksinger*, 84 N. Y. 31; *Cronkhite* v. *Cronkhite*, 94 id. 323.) A parol license is not

assignable. (*Wolf* v. *Frost*, 4 Sandf. Ch. 72; *Mumford* v. *Whitney*, 15 Wend. 380; *In re Coburn*, 1 Cow. 568; Washb. Easements and Serv. [2d ed.] 6.)   Any conveyance by Bradbury of the license and privilege he enjoyed revoked it *ipso facto.* (*Jackson* v. *Babcock*, 4 Johns. 419; *Huntington* v. *Asher*, 96 N. Y. 612; Washb. Easements and Serv. [2d ed.] 6, 7; *Selden* v. *D. & H. C. Co.*, 29 N. Y. 634; 3 Kent's Com. 452; *Greene* v. *Collins*, 86 N. Y. 246; *Adams* v. *Conover*, 87 id. 422; *Wiseman* v. *Lucksinger*, 84 id. 31; *Cronkhite* v. *Cronkhite*, 94 id. 323.)   These conveyances by these intervening owners operated to revoke the licenses given, and each license disappeared by the conveyance by the grantor respectively. (*Winne* v. *Ulster County Savings Inst.*, 37 Hun, 349.) An easement is a permanent interest in another's land, with a right to enter at all times and enjoy it. (3 Kent, 452; *Huntington* v. *Asher*, 96 N. Y. 612.)   No easement by implication was created therein. (*Brace* v. *Yale*, 86 Mass. [4 Allen], 393; *Philbrick* v. *Ewing*, 97 Mass. 133; *Ferrin* v. *Garfield*, 37 Vt. 312; *Green* v. *Collins*, 86 N. Y. 253; *Voorhees* v. *Burchard*, 55 id. 98.)   An easement by implication arises only "when the owner of an entire tenement separates the same, or where the owner of two or more adjacent tenements conveys one with a continuous apparent easement running through the whole." (*Parsons* v. *Johnson*, 68 N. Y. 68; Wharton's Law Lexicon; title "easements"; 2 Washb. on R. Prop. 317; Bouvier's L. Dict. 515; *Lampman* v. *Milks*, 21 N. Y. 505; *Butterworth* v. *Crawford*, 46 id. 349, 352; *Nicholas* v. *Chamberlain*, Cro. Jac. 121; *Simons* v. *Cloonan*, 47 N. Y. 3; 81 id. 557; *Robbins* v. *Barnes*, Hob. 731.)   Bradbury's attempt to convey or transfer such a license revoked it. (*Jackson* v. *Babcock*, 4 John. 419; *Huntington* v. *Asher*, 96 N. Y. 612; *Cronkhite* v. *Cronkhite*, 94 id. 323; *Wiseman* v. *Lucksinger*, 84 id. 31; 3 Kent's Com. [12th ed.] 453; *Wolf* v. *Frost*, 4 Sandf. Ch. 72; *Mumford* v. *Whitney*, 15 Wend. 380; *In re Coburn*, 1 Cow. 568.)   The easement claimed by implication must be open and apparent. (*Butterworth* v. *Crawford*, 46 N. Y. 349.)

Still it does not pass unless it exists as matter of legal right. (*Butterworth* v. *Crawford*, 46 N. Y. 349.) Rowley's knowledge when he took his deed, that his grantor did not own the right to supply the premises with water in any way or manner; that he did not own the right to carry or conduct the water over, through or across the intervening premises in any way or manner and that he did not own the pipes or any right to lay or continue them, defeats the implication of a grant or conveyance of any such right or easement. (*Simons* v. *Cloonan*, 47 N. Y. 3; 2 Lansing, 346; *Curtiss* v. *Ayrault*, 47 N. Y. 73; Moak's Underhill on Torts, 431, 432.) The plaintiff is estopped from asserting any easement or right in the spring or in the waters thereof. (*De Herques* v. *Marti*, 85 N. Y. 609; *Creque* v. *Sears*, 17 Hun, 123; *Blair* v. *Wait*, 69 N. Y. 133; *Nicoll* v. *Burke*, 45 Super. Ct. 129; *Wendell* v. *Van Rensselaer*, 1 John. Ch. 344; *Storrs* v. *Barber*, 6 id. 166; *Tilton* v. *Nelson*, 27 Barb. 595.) The defendant is not estopped from asserting that a water right as claimed, or any water right, does not exist; that plaintiff owns no interest in the spring or its waters, or to be supplied with water from the spring through the pipes in question. (*Butterworth* v. *Crawford*, 46 N. Y. 352.) The easement claimed not being necessary for the enjoyment of the plaintiff's premises, the broad doctrine of easement by implication will not then be applied. (*Green* v. *Collins*, 86 N. Y. 253; *Tabor* v. *Bradley*, 18 id. 112; *Johnson* v. *Jordan*, 2 Metc. 237; *Ogden* v. *Jennings*, 62 N. Y. 526, 531; *Griffiths* v. *Morrison*, 36 Hun, 337.)

*Albert F. Gladding* for respondent. Where the owner of an estate conveys a portion thereof, or the owner of two estates conveys one of them, the purchaser takes it with all the incidents and appurtenances which, at the time, appear to belong to it as between it and the portion retained. (*Simons* v. *Cloonan*, 81 N. Y. 557; *Lampman* v. *Milks*, 21 id. 505; *Outerbridge* v. *Phelps*, 58 How. Pr. 77; *Green* v. *Collins*, 86 N. Y. 246; *Adams* v. *Conover*, 87 id. 422; Esek Cowen's criticism of last two cases, 25 Alb. L. J. 279; 26 id. 224–245.)

The fact that the plaintiff's and defendant's premises were separated by intervening lands at the time of Bradbury's conveyance to plaintiff's grantor does not change the effect of that conveyance, in creating and passing the easement and right to the water as it was then being used, in favor of the plaintiff's premises as the dominant tenement, and against Bradbury's remaining estate (now defendant's) as the servient tenement. (*Philbrick* v. *Ewing*, 97 Mass. 133 ; *Farmer* v. *Ukiah Water Co.*, 36 Cal. 11 ; *Leonard* v. *Leonard*, 84 Mass. 543 ; *Seymour* v. *Lewis*, 13 N. J. Eq 239 ; *Baker* v. *Beasey*, 74 Me. 472 ; *Gilbert* v. *Petiler*, 38 Barb. 488 ; 38 N. Y. 165 ; *Browner* v. *Jones*, 23 Barb. 153 ; *Dyer* v. *Sanford*, 50 Mass. 395, 405 ; *Leonard* v. *Leonard*, 89 id. 277 ; *Elliott* v. *Sallu*, 14 Ohio, 10 ; *French* v. *Morris*, 101 Mass. 68 ; *Owen* v. *Fields*, 102 id. 90 ; *Lattimer* v. *Lattimer*, 72 N. Y. 174 ; *Trustees, etc.* v. *Lynch*, 70 id. 440 ; *Bloomfield* v. *Ketchum*, 25 Hun, 218 ; *Hamil* v. *Griffith*, 40 How. Pr. 305 ; *Greene* v. *N. Y. C. & H. R. R. R. Co.*, 65 id. 154 ; *Foster* v. *Buffalo*, 64 id. 127 ; Washb. on Easm. 12, 13, 75, 96 ; *Curtiss* v. *Ayrault*, 47 N. Y. 73 ; *Hills* v. *Miller*, 3 Paige, 254 ; 2 Washb. on R. Prop. 316, 317 ; *Roberts* v. *Roberts*, 55 N. Y. 275 ; *Flint* v. *Bacon*, 13 Hun, 454.) All easements must be created by grant. (Goddard on Easement's, 4, 23, 80, 83.) It is no objection to the enforcement of a contract by one party against another, that some third person stands in a situation to prevent (if he pleases to interfere), the one party from realizing the benefits of his contract. (*Green* v. *Collins*, 86 N. Y. 250 ; *Leonard* v. *Leonard*, 84 Mass. 543 ; *Huttemier* v. *Albro*, 18 N. Y. 48.) An easement created by reservation in favor of the grantor is upheld as a grant of the same from the grantee, and may be created independent of the ownership of any estate to which it was appurtenant, or with which it was to be used and in favor of the grantor, his heirs and assigns. (Washb. on Easmts. 11, 12 ; Goddard on Easmts. 100 ; *Goodrich* v. *Burbank*, 94 Mass. 459.) When Bradbury conveyed his lower estate to plaintiff's grantor, he had the power to convey by express words, appropriate words therefor in the deed, the right to the

waters of this spring as they were then being openly and visibly used by the lower tenement. (*Trustees* v. *Lynch,* 70 N. Y. 440 ; *Bloomfield* v. *Ketchum,* 25 Hun, 218.) If he had the power to convey this easement, then he did convey it, it being at the time an apparent appurtenant, in actual use and necessary to the full enjoyment of the estate conveyed. (*Philbrick* v. *Ewing,* 97 Mass. 133.) When Bradbury conveyed his lower estate to plaintiff's grantor, he not only had the power to convey the right to the water from the spring from his remaining land, but that right was an apparent easement attached to the premises conveyed, and practically annexed thereto by the continuous pipe from the spring to the dwelling. (Goddard on Easm. 87, 88 ; Washb. on Easm. 75–79 ; *Jackson* v. *Stevens,* 16 Johns. 110 ; *Jackson* v. *Bull,* 1 Johns. Cas. 90 ; *Jackson* v. *Wheeler,* 10 Johns. 164 ; *Jackson* v. *Demont,* 9 id. 55 ; *Trustees* v. *Lynch,* 70 N. Y. 450.) Bradbury and his grantee, the defendant, are estopped from claiming that he had no right to convey the water across the intervening lands. (*Leonard* v. *Leonard,* 84 N. Y. 543 ; *Greene* v. *Collins,* 86 Mass. 246 ; *Huttemeir* v. *Albro,* 18 N. Y. 48 ; *McCarty* v. *Leggett,* 3 Hill. 134 ; *Abbott* v. *Allen,* 14 Johns. 248 ; *Greenley* v. *Wilcox,* 2 id. 1 ; *Hamilton* v. *Wilson,* 4 id. 72 ; *Sinclair* v. *Jackson,* 8 Cow., 553 ; *Jackson* v. *Bull,* 1 Johns. Cas. 90 ; *Jackson* v. *Stevens,* 16 John. 110 ; *Dezell* v. *Odell,* 3 Hill, 215.) The defendant is estopped by her conduct from claiming, as against the plaintiff, that the right to the water from this spring did not belong to the plaintiff's premises at the time the plaintiff purchased and received her conveyance, as an easement attached thereto, and which would pass by a conveyance of the same. (*McNeil* v. *Tenth Nat. Bk.,* 46 N. Y. 325.) The plaintiff and her grantors had acquired the right by prescription to conduct the water across the intervening lands for the use of her premises. (*Nichols* v. *Wentworth,* 100 N. Y. 455 ; *Murchie* v. *Gates* [Me. Sup. Ct.], 34 Alb. L. J. 130 ; *Leonard* v. *Leonard,* 84 Mass. 543.) The prior owners of plaintiff's premises having been granted the privilege and license by the owners of the intervening prem-

ises to lay the pipe from plaintiff's dwelling to the dwelling upon the intervening premises, and having expended money on putting in such pipe and the fixtures connected therewith upon plaintiff's premises, constituting improvements of a permanent character, such license became irrevocable in favor of plaintiff's premises and attached to the same. (*P. Gas Co.* v. *Cit. Gas. Co.*, 89 N. Y., 493; Wiseman v. *Lucksinger*, 84 id. 31–34; Washb. on E., 8, 23, 24, 379, 389; *Wickersham* v. *Orr*, 9 Ia. 253; *Snowdon* v. *Wilass*, 19 Ind. 10; *Winter* v. *Brockwell*, 8 East, 208.) Bradbury having originally consented that Rowley might take the water from his spring by making the connection of the pipes upon the intervening premises, he cannot revoke such license. (Washb. on E., 652, 653; *Curtiss* v. *Noonan*, 92 Mass. 406.) The plaintiff is not estopped from asserting her right to the water from the spring by anything that Rowley may have said to the defendant's husband before her purchase. (*Maguire* v. *Selden*, 100 N. Y. 612; *Andrews* v. *Ætna Ins Co.*, 85 id. 334, 335; *Jewett* v. *Miller*, 10 id. 402; *Chaut. Bk.* v. *White*, 6 id. 236, 249; *Winegar* v. *Fowler*, 82 id. 315; *Maloney* v. *Horan*, 12 Abb. Pr. [N. S.] 289; *McCulloch* v. *Wellington*, 21 Hun, 5; *Babcock* v. *Utter*, 1 Abb. Ct. App. Dec. 28; *Spencer* v. *Carr*, 45 N. Y. 406; *Lefever* v. *Lefever*, 30 id. 27; *Grant* v. *Va. C. & I. Co.*, 3 Otto, 335; *Brewster* v. *Striker*, 2 N. Y. 19.) A party setting up an equitable estoppel is himself bound to the exercise of good faith, and must act promptly in the exercise of the rights he claims under it, or the estoppel will be deemed to have been waived and the matter set at large. (*Andrews* v. *Ætna Ins. Co.*, 85 N. Y. 343; Bigelow on Estop. 293.) It is not necessary that an apparent easement, which is created by a grantor upon the conveyance of the dominant estate, should be one of absolute necessity; it is sufficient if full enjoyment cannot be had without it, (*Simons* v. *Cloonan*, 81 N. Y. 557.) Plaintiff's grant could not be contradicted or limited in its legal effect by parol statements made to some previous owner of her premises. (*Greene* v. *Collins*, 86 N. Y. 246, 254; *Mott* v. *Palmer*, 1 id. 564, 574.)

PECKHAM, J.   This is an appeal by the defendant from a judgment of the General Term affirming a judgment in favor of the plaintiff entered upon the decision of the trial judge at circuit without a jury.

Among the facts found are the following: On the 10th of March, 1865, one Bradbury took a conveyance of the premises now occupied by the plaintiff, and in June, 1870, he conveyed those premises to one Rowley, who, in February, 1883, conveyed them to the plaintiff.   Bradbury had also been the owner and in possession of the premises now occupied by the defendant for thirty years prior to April 5, 1882, at which time he died, and on the 3d of July, 1882, the defendant took title to these premises from the executors of Bradbury who had power to sell.   Thus, from 1865 to 1870, Bradbury was the owner both of the premises occupied by the plaintiff and of those occupied by the defendant.   In 1860 one Aldrich Windsor conveyed to one Beebe a strip of land situated between the two above-mentioned lots, and such intervening strip was, at all points between the other two lots, at least fourteen rods wide.   So that at the time when Bradbury was the owner of the premises now owned by the plaintiff and defendant, respectively, those lands were, and at all times for the past thirty years had been, entirely disconnected and separated from each other by this intervening lot.   In December, 1861, Beebe conveyed the intervening lot to one Trask, who, in 1868, conveyed it to one Clark, who, in 1870, conveyed it to one Root, who has since that time been and now is the owner thereof.

The title, it will be observed, to the plaintiff's and defendant's premises, respectively, came to Bradbury from entirely different sources, and while Bradbury parted with the title to the premises now owned and occupied by the plaintiff in June, 1870, he continued to hold and own the premises now occupied by the defendant up to the time of his death, in 1882. The premises owned and occupied by the plaintiff are described in the various conveyances through which she claims title, by metes and bounds, "with the appurtenances thereto belong-

ing;" and no conveyance makes any mention of any further or greater rights, "or of any water rights, spring, or the right to take water from any spring, or from the spring hereinafter mentioned." The title of the defendant was from the executors of Bradbury, and by a good and sufficient deed describing the lands and premises by metes and bounds, and containing no limitation or reservation whatever, "nor any mention of any right in any other person to any spring or to the water from the same, in whole or in part, or to the use of the same, which might be on the said premises."

On the premises owned and occupied by the defendant, there is, and has been for many years, a living spring of water, and some time, about 1860 or 1861, while Beebe was the owner and in possession of the intervening premises, fourteen rods wide, as above mentioned, he was desirious of obtaining a supply of water from the spring situated on the defendant's land, then owned by Bradbury, and for that purpose he applied to Bradbury to purchase from him the right to lay a pipe under the ground from the spring to Beebe's house, upon the intervening land, and to take the water from the spring through the same. Bradbury refused to sell or convey to him any such right, or any right to lay a pipe or take water from the spring, but he gave Beebe a parol license to lay a pipe from the spring to his house, and conduct the water thereto, at the same time informing Beebe that he should make a small charge therefor as the consideration for such privilege in the way of an annual rent. Under this license Beebe put the pipe from the spring, under ground, to his house, where it discharged water into an open tub, and where the pipe terminated. When the subsequent owners of the same premises, then owned by Beebe, respectively, came into the possession of the same under their purchases, Bradbury informed each of them that he should charge rent for the water from the spring, and in this they all acquiesced.

After Beebe put this pipe down, and some time after April, 1860, one Merchant, who was then the owner of the premises now occupied by the plaintiff, with the consent of Bradbury,

and also with the consent of Beebe, the owner of the inter-
vening land, laid a pipe from his (Merchant's) house on his
premises, under ground, to the tub on the premises of Beebe,
and took the surplus water from the tub through the pipe for
the use of his house.  His right to lay this pipe and take the
water also rested in a parol license only.  Bradbury never
conveyed to Beebe, or to any of his successors, any right or
privilege to take the water from the spring, or to lay the pipe
under the ground, excepting in the manner already stated.

In 1865, Rowley was living on the premises now owned by
the plaintiff, as tenant of Bradbury, and with the knowledge
and by the direction of Bradbury, he connected the pipe run-
ning from the spring to Beebe's house on the intervening
premises with the pipe running from the house on the premises
on which he was then living and made one continuous line,
a small branch pipe being attached to discharge the water into
the tub at the Beebe house.  Bradbury did not own the pipe
leading from the spring to Beebe's premises, but it was laid and
owned by Beebe.  In June, 1870, when Bradbury conveyed the
premises now owned by the plaintiff to the said Rowley, the water
from the spring on Bradbury's premises now occupied by the
defendant was running through a pipe and discharging into a
tub on the premises now owned by the plaintiff, in the manner
above described, and the learned judge in his findings adds:
" That it was necessary for the use and enjoyment of such
premises; and with such water running the plaintiff's premises
were of much more value than they would be without it."
This finding as to the necessity of the water for the use and
enjoyment of the premises is limited by the further finding in
which the learned judge says that the premises could have
been supplied with water by means of a well dug on the
premises.  The defendant also offered to show such well could
be dug for $25, which would furnish a constant supply of
good water, but under objection the evidence was excluded.
While Rowley was the owner of the premises now owned by
the plaintiff, he informed the defendant, who was about pur-
chasing the premises now owned by her from the executors

of Bradbury that no person other than the intended grantors owned the said spring, or any right in or to the waters of the same, or the right to take water from it, and she relied on such statement in making the purchase. Subsequently, the defendant disconnected the pipe from the spring on her premises, and this action was brought by the plaintiff to enjoin the defendant from such action and to enforce her right to a supply of water from the said spring.

Upon these facts the court granted the injunction and gave judgment for the plaintiff. She bases her right of action in this case upon two propositions, first, that the right to the use of this water passed to her by the deeds from Bradbury to Rowley, and from Rowley to her, as an appurtenance to the premises, and, second, that under the circumstances there was an implied easement consisting of the right to take water through or over the lands now owned by the defendant, so long as the parties owning intervening lands did not object to its passage across such lands in order to reach the lands now owned by the plaintiff.

We think no such right passed by the several conveyances to plaintiff and her grantors, which simply conveyed the land by metes and bounds "with the appurtenances thereunto belonging." Nothing passes by the word appurtenance except such incorporeal easements or rights or privileges as are strictly necessary and essential to the proper enjoyment of the estate granted. A mere convenience is not sufficient to thus create such a right or easement. (See *Ogden* v. *Jennings*, 62 N. Y. 526 ; *Green* v. *Collins*, 86 id. 246; *Griffiths* v. *Morrison*, 106 id. 165.)

Nor do we think that under the circumstances there was any implied easement which passed to the grantees under the deed from Bradbury.

It must be remembered that the two premises, although at one time both owned by Bradbury, were essentially two distinct plots of ground, and the title to each vested in Bradbury from a different source. Between the two lots of ground was this intervening strip of fourteen rods in width, substan-

tially and physically separating the premises and making two separate and distinct lots. It must also be remembered that the spring existing on the land now owned by the defendant was owned by Bradbury long anterior to the time when he became the owner of the premises now owned by the plaintiff, and that before that time, and while the intervening lot was owned by one Beebe, permission had been obtained by Beebe from Bradbury to take the waters from the spring across Bradbury's land to the lands now owned and occupied by Beebe, and that Bradbury had distinctly refused to grant him any permanent right, having given him simply a parol license to take it during his pleasure only, and in consideration of a small annual rent.

This state of things existed at the time Merchant, who occupied at one time the land now owned by the plaintiff, was permitted to take the surplus water from the intervening lots and conduct it to his own premises; and that was done by the mere parol license of Beebe and Bradbury. The same state of things existed at the time Rowley succeeded Merchant as tenant to Bradbury, and subsequently as Bradbury's grantee, Rowley at all times understood perfectly well the terms upon which his right existed to conduct the water over Bradbury's premises to his own, and he understood that it rested simply upon the. parol license of Bradbury. All the facts show conclusively that Bradbury understood his own rights in the premises and never intended that any right to obtain the water from the spring on the premises now occupied by the defendant should accrue to the owners or occupiers either of the intervening lot or of the premises now occupied by the plaintiff. We see nothing in the facts found by the learned trial judge which would change the right to use the water from a right resting simply in a parol license, to an absolute right based upon an easement implied in a grant of the premises to plaintiff and her grantors.

We do not think the case comes within the principle of those cases cited by the counsel for the plaintiff, of which *Lamp-*

*man* v. *Milks* (21 N. Y. 505), and *Curtiss* v. *Ayrault* (47 id. 73) are examples. In *Lampman* v. *Milks* the original owner of the land across which a stream flowed, diverted the stream through an artificial channel so as to relieve a portion of the land formerly overflowed by the stream, and that portion of the land he afterwards conveyed to a third party. The court held that neither he nor his grantees of the residue of the land could return. the stream to its ancient bed to the damage of the first grantee. That is an entirely different case from the one at bar. The land which the owner conveyed after he had diverted the channel of the stream would have become worthless by being overflowed if he or his grantees of the remaining portion had been permitted to return the stream to its original channel. The court held that under such circumstances the owner in conveying the premises, thus relieved from overflow, charged the remaining portion of the premises with the servitude of submitting to the stream running through their lands. In the course of the opinion in that case the learned judge distinguished between those easements which are continuous, that is, self-perpetuating, independent of human intervention, and those which are termed discontinuous easements, the enjoyment of which can be had only by the interference of man, such as rights of way or a right to draw water. In regard to such latter kind of easements, upon a severance of tenements by the owner, they only pass which are absolutely necessary to the enjoyment of the property conveyed. In *Curtiss* v. *Ayrault* the same general doctrine is held. In that case it appeared that a marsh had been drained by the owner of the whole tract by digging a ditch which carried the water to other portions of the tract where it made a permanent channel in which the water, gathered in the marsh, flowed in a continuous stream, thus mutually benefiting the lands drained and the lands through which a supply of good water was thereby conveyed. The owner of the property, while these reciprocal benefits and burdens were in existence and apparent, divided the tract into parcels and conveyed the parcels to different grantees who contracted with reference to the then open

and apparent condition of the land, and it was held that such condition was essential to the enjoyment of all the lands, and especially to that portion which, by the digging of the ditch, had been drained and made good available land.

To the same effect is *Adams* v. *Conover* (87 N. Y. 422), although that case arose under an alleged breach of covenant of warranty and of quiet enjoyment contained in the deed. It was contended that the covenant was broken because at the time of the conveyance of the premises, which consisted of a mill, a dam and a pond which furnished water power for the mill, they were in a certain visible condition in regard to the height of the dam, and yet a right existed in and was subsequently exercised by a third party to compel the lowering of such dam, the effect being to substantially ruin the premises for use as a water power, which was the sole consideration for their purchase and their chief value. The court held that the conveyance by metes and bounds, which included the dam and water power, conveyed the dam as it then stood at its existing and apparent height. The court said that the power of the water thus created and stored was the essential and material element of value in the mill property which was the subject of the conveyance, and, therefore, there was a breach of the covenant of warranty and of quiet enjoyment when it was shown that there was a superior right in a third person to demand a reduction of the height of the dam and the lessening of the head of water thereby, and it was so determined because of the fact that substantially the whole value of the property depended upon continuing the height of the dam as it existed, openly and apparently, at the time of the conveyance. We have carefully looked through the cases cited in the opinion of the learned justice who wrote at General Term, but we can find nothing in them that militates against the views here expressed.

Upon all the facts in this case we are of opinion that there was nothing but a mere parol license proved from the grantor of the defendant, and that the right to take or convey water from the defendant's premises did not pass to the plaintiff

by the use of the word appurtenance in any of the deeds to her or her grantors, nor did such a right pass as an easement by implication.

The judgments of the General Term and of the Circuit should therefore be reversed, and a new trial granted, costs to abide the event.

All concur.

Judgments reversed.