(30 Misc. Rep. 236.)

### CITY OF GENEVA v. GENEVA TEL. CO.

(Supreme Court, Special Term, Monroe County. December, 1899.)

1. TELEGRAPHS AND TELEPHONES—REMOVAL OF WIRES—CONSTITUTIONAL LAW.
   Laws 1897, c. 360, § 58, as amended by Laws 1899, c. 405, authorizing the board of public works of the city of Geneva to require telephone companies to move their wires from poles to underground conduits whenever it shall, by resolution, determine that public safety requires such removal, is not unconstitutional, as imposing taxation on such corporations without their consent, or opportunity of being heard.

2. SAME—DUE PROCESS OF LAW.
   Laws 1897, c. 360, § 58, as amended by Laws 1899, c. 405, authorizing the city of Geneva to require telephone companies to move their wires from poles to underground conduits, is within the police power of the legislature, and hence is not invalid as a deprivation of property without due process of law.

3. SAME.
   The city of Geneva may require a telephone company in the city to place its wires in a conduit prepared by it, as authorized by Laws 1897, c. 360, § 58, as amended by Laws 1899, c. 405, though it intends that the conduits shall also be used by other companies, and it has made no regulations as to how the conduits shall be used by the different companies, as it will be presumed that the officers of the city will make proper regulations.

4. SAME.
   The city of Geneva may require a telephone company to place its wires in a conduit prepared by it, as authorized by Laws 1897, c. 360, § 58, as amended by Laws 1899, c. 405, and refuse to allow the company to construct its own conduits.

Application for mandamus by the city of Geneva against the Geneva Telephone Company. Granted.

John G. Farwell and 'Charles J. Bissell, for relator.

Hawley, Nichols & Haskens, for defendant.

DAVY, J. This is an application by the city of Geneva for a peremptory writ of mandamus requiring the Geneva Telephone Company to remove its telephone wires and electrical cables and conductors from overhead in certain streets of said city, and place them in conduits prepared by the city under the surface of the streets, and to remove its poles from the streets.

. Section 58 of chapter 360, Laws 1897, entitled "An act to incorporate the city of Geneva," as amended by chapter 405, Laws 1899, provides that whenever the board of public works of the city of Geneva shall, by resolution, determine that public safety requires the removal of telegraph, telephone, or electric wires or cables, or electric feed cables of any street-railway company, or other appliances for conducting electricity, and the poles thereof heretofore erected in certain streets named in the act, it shall have power, by an ordinance or resolution, to require any company or corporation or individual to remove its wires and electrical conductors from overhead in the street, and place them in conduits under the surface of the streets in such manner as shall be directed by said board of public works, and subject to such regulations and restrictions as such board may make and impose in respect thereto for the benefit of the public, the city, or its citizens; and a compliance with such ordinances or resolution in respect to the removal of the poles, wires, cables, or other appliances for the conducting of electricity through said streets may be enforced by mandamus by any court of competent jurisdiction upon the application of the city as relator; and if the said board of public works shall construct conduits for the reception of wires and electrical conductors, as provided in said act, the board of public works may, by resolution or ordinance, require the companies to remove their wires and electrical conductors, and place them within the conduits constructed by the city; and such proportion of the expense of the construction thereof shall be paid by the company, corporation, or individual using the same as the common council, by resolution, shall determine. In July, 1899, the board of public works passed a resolution requiring said telephone company to remove its wires and electrical cables and conductors from overhead in certain streets named in the resolution, and place them in conduits under the surface of the streets, constructed by the city of Geneva, and to remove its poles from said streets, for the reason that public safety requires their removal. It appears that the Geneva Telephone Company refuses to comply with the requirements of said resolution, for the reason that the board of public works has, by resolution, required all the other telephone and telegraph companies, except one or two, to place their wires in said conduit; that, in the absence of any rules or regulations or restrictions as to the manner in which said wires should be placed in said conduit, some of which are high-tension wires, it would impair the operation of de-

fendant's telephone system. The relator contends that it has constructed a six and nine duct conduit, with manholes, laterals, and distributing points in all the streets referred to in the·resolution, and that the conduits, laterals, and distributing points and manholes thereto have been properly constructed and completed.

The act·is attacked by the learned counsel for the defendant as unconstitutional upon the ground that it imposes a tax or assessment upon the defendant without its consent, or opportunity of being heard, and that it deprives the defendant of its property without due process of law; so that the principal question which arises upon this application is whether the provisions of the act in question, requiring the defendant to place its wires in conduits constructed by the city, and to pay its proportion of the expense, is such an interference with the franchise of the defendant as to render the provisions of the act .void, and in violation of the federal constitution. It is a well-settled rule of law that there are certain powers belonging to the state which no legislation can limit, even in cases of contract or franchise. These powers are generally called the "police powers." To say that the act compelling the telephone company to remove its wires from overhead, and to put them in conduits or subways under the ground, is a violation of the constitutional right, seems to go to the extent of preventing any interference on the part of the legislature in reference to telephone and telegraph companies. It seems to me that the power exercised in this case by the legislature is necessary for the purpose of protecting the rights of the public. It is not, in the strict sense of the term, a violation of any right, but the exercise of a power necessary wherever telephone and tele-· graph.poles and wires obstruct the streets and endanger the public safety. It may be said that such a power is incident to every well-regulated municipality, without which the property, lives, health, and happiness of the people cannot be well protected. It has often been held that the police power is an inherent power of the state, and the legislature may impose such regulations upon the use of property and the conduct of individuals as will promote the comfort and safety of the community. If the removal of the telephone wires, and placing them under the surface of the streets, adds to the safety of the public, the legislature has power to direct it to be done. Under the act no property is taken from the Geneva Telephone Company. It is simply required to remove its wires and electrical conductors from the poles, and place them in conduits constructed by the city under the surface of the streets. It has frequently been held that a statutory enactment will not be declared void unless it clearly conflicts with the constitution, and the presumption is in favor of the constitutionality of legislative enactments. So long as the legislature does not pass the limits fixed by the constitution, the courts have no power to interfere on the ground that the legislative acts violate the natural principles of justice and right. It cannot now be questioned, under the decisions of the state and federal courts, that the legislature may do whatever is necessary and proper under the police power of the state for the public welfare in the control and regulation of the franchises that corpora-

tions have obtained by legislative enactments.   Police power, in its broadest acceptation, as defined by the American & English Encyclopedia of Law, means:

"The general power of the government to preserve and promote the public welfare, even at the expense of private rights.   Police power can only be exercised by legislative enactment, and it rests solely within legislative discretion to determine when the public welfare or safety requires its exercise.   Courts are authorized to interfere, and declare a statute unconstitutional, only when it conflicts with the constitution.   With the wisdom, policy, or necessity of such an enactment they have nothing to do.   But, while such are the legislative functions, there must always be a reason for the exercise of the power, and rights granted by federal and state constitutions cannot be violated by the mere declaration that an occupation or any particular act is injurious to the public welfare."

In People v. King, 110 N. Y. 423, 18 N. E. 245, 1 L. R. A. 293, Judge Andrews said that the police power of the state is incapable of exact definition, but the existence of which is essential to every well-ordered government.   By means of this power the legislature exercises a supervision over matters involving the common weal, and enforces the observance by each individual member of society of the duties which he owes to others and to the community at large.   It may be exercised whenever necessary to secure the peace, good order, health, morals, and general welfare of the community; and the propriety of its exercise within constitutional limits is purely a matter of legislative discretion, with which the court cannot interfere.   The rule is that, where one devotes his property to a use in which the public has an interest, he must submit to be controlled by the public for the common good to the extent of the interest he has thus created.   The public are interested in the safe and proper construction of telephone wires, and hence the legislature may make rules and regulations for the proper management and operation of all telephone companies.   Thus the state, in the exercise of its police power, may require telephone companies to put their wires in conduits under the surface of the streets, and this power is not restricted by the state or federal constitutions, even though contracts are thereby affected.

The case of Stone v. Mississippi, 101 U. S. 814, 25 L. Ed. 1079, is an interesting authority upon this point.   The legislature of the state of Mississippi had chartered a corporation with the privilege of holding lotteries for a period of 25 years in consideration of certain payments to be made to the state.   Before this charter had expired, the state adopted a constitution declaring that no lottery theretofore chartered be permitted to be drawn, or tickets therein to be sold.   It was claimed that this provision was in violation of the constitution of the United States, because it impaired the franchises previously granted to the company for a valuable consideration; but the supreme court of the United States decided that it was a legitimate exercise of the police power of the government, and therefore not unconstitutional.   Chief Justice Waite, delivering the opinion of the court, said:

"All agree that the legislature cannot bargain away the police power of the state.   Irrevocable grants of property and franchises may be made if they do

not impair the supreme authority to make laws for the right government of the state, but no legislature can curtail the power of its successors to make such laws as they may deem proper in matters of police."

In People v. Squire, 107 N. Y. 593, 14 N. E. 823, Chief Judge Ruger said:

"The necessity of these acts sprung out of a great evil, which in recent times has grown up and affected large cities by the multiplication of rival and competing companies organized for the purpose of distributing light, heat, water, the transportation of freight and passengers, and facilitating communication between distant points, and which require in their enterprises the occupation not only of the surface and air above the streets, but indefinite space under ground. The evil had become so great that every large city was covered with a network of cables and wires attached to poles, houses, buildings, and elevated structures, bringing danger and inconvenience to the public." He said that: "The statutes were obviously intended to restrain and control, as far as practicable, the evils alluded to, by requiring all such wires to be placed underground in such cities, and be subject to the control and supervision of local officers, who could reconcile and harmonize the claims of conflicting companies, and obviate in some degree the evils which had grown to be almost, if not quite, intolerable to the public. The scheme of these statutes was, not to annul or destroy the contract rights of such companies, but to regulate and control their exercise."

In Telegraph Co. v. Hess, 125 N. Y. 641, 26 N. E. 919, the court held that the act (Laws 1885, c. 499) providing for the placing of electrical conductors underground in the cities of the state is constitutional; that it does not annul, destroy, or materially impair any franchises or contract rights previously secured under the general telegraph act, but simply regulates and controls the exercise so that they shall cease to constitute a public nuisance. Subways having been constructed in certain of the streets of the city of New York by the Consolidated Telegraph & Electrical Subway Company, under the supervision and with the approval of the commissioners of electrical subways, notice was given to the American Rapid Telegraph Company to remove its poles and wires from the streets, and place its electrical conductors in such subways. Having refused to comply with such notice, the commissioners of public works caused the poles to be cut down, and the wires to be removed from the streets. The court held that the public authorities had a right to remove them from the streets after the building of the subways and the notice to the telegraph company, and that the telegraph company had no right longer to maintain its poles and wires above the surface of the streets. They were then there without authority, and thus became a nuisance, and the public officials had a right to remove them. The court also held that the legislature, in the exercise of its police powers, may regulate the use of the streets of a city, and may prohibit their use for any purpose inconsistent with general street purposes. It may also authorize their use for public purposes not inconsistent with their use as streets. Of this power of control over streets for public purposes the legislature cannot devest itself.

In W. U. Tel. Co. v. Mayor, etc., of City of New York (C. C.) 38 Fed. 552, the board of commissioners of electrical subways, created by the act of 1885, having made a contract with a subway company to

lay subways for the use of all electrical companies, authorizing the subway company to charge a rental for the use of the subways, reserving to the commissioners such control over the subways as was calculated to secure to all companies reasonable facilities and protection, and providing that all companies using the subways should own and control their conductors, and that the commissioners should use all lawful means to compel all companies to use the subways and pay a fair rental therefor, the court held that the act of the legislature ratifying the contract was none the less a police regulation because of the special privileges given to the subway company, and that the statute was not invalidated as a confiscation of property rights by depriving companies owning electric wires of their easements for the benefit of the subway company. It was also held that, where the public authorities are not acting mala fide, the exercise of their discretion will not be reviewed in a court of equity on the allegation of the telegraph company that they are attempting to compel it to place its wires in insufficient and defective subways.

It must be conceded, therefore, that the legislature, having control over telegraph and telephone corporations throughout the state, may make such regulations to prevent the public evils and private injuries resulting from dangers to the use of their poles and wires as, in its judgment, are calculated to accomplish this end. It may, therefore, compel a telephone or telegraph company to put its wires underground, and to remove its poles from the streets, to guard against the dangers that are liable to occur. People v. Squire, supra; W. U. Tel. Co. v. Mayor, etc., of City of New York (C. C.) 38 Fed. 552; Telegraph Co. v. Hess, supra.

The defendant contends that, in the absence of any rules or regulations as to the manner in which the wires should be placed in the conduits, it may impair the operation of defendant's telephone system if it is required to place its wires in said conduits. The relator, however, claims that it has constructed suitable six and nine duct conduits, and manholes, and laterals, and distributing points in all the streets referred to in the resolution of the board of public works, and that the laterals and distributing points and manholes have been properly constructed and completed. Public officers, when acting in good faith within the scope of their authority, are seldom interfered with by the courts. The exercise of a discretionary power, if not abused, will not be interfered with to see whether they are acting wisely or judiciously in matters in which they are authorized by the legislature to exercise their discretion. Philips v. Wickham, 1 Paige, 590; W. U. Tel. Co. v. Mayor, etc., of City of New York, supra; High, Inj. § 1240; 2 Story, Eq. Jur. (13th Ed.) § 955. It was urged in the case of W. U. Tel. Co. v. Mayor, etc., of City of New York, supra, that the defendants were attempting to compel the telegraph company to place its wires in some of the conduits of the subway company, which were insufficient and defective to a degree that would seriously affect the working of its wires. Judge Wallace said:

"It is needless to say that the defendants deny this averment. However that fact may be, the defendants are not acting mala fide, and as they are

62 N.Y.S.—12

exercising discretionary powers as public officers, which are lawful within the scope of their authority, the exercise of that discretion in good faith will not be reviewed by a court of equity, and their determination is conclusive."

I am inclined to the opinion, however, that the board of public works, in the exercise of its discretion as to the kind of conduits it shall construct, must exercise that discretion prudently, and with reasonable skill and care, keeping in view the necessary facilities and requirements of the company to enable it to operate its lines successfully. The legislature no doubt assumed that in giving the board of public works a discretionary power in reference to the construction of the conduits it would not do any act that would unnecessarily impair defendant's franchise, or its telephone facilities with the public. The usefulness of the telephone, which is so generally used, and which adds so much to the convenience of the public, especially in large cities, ought not to be impaired by any unreasonable or arbitrary discretion of the municipal authorities. It was held in Cain v. City of Syracuse, 95 N. Y. 87, that, where a public body is clothed by statute with power to do an act which the public interests require to be done, and the means of performance are placed at its disposal, the execution of the power may become a duty, although the statute conferring it be only permissive in its terms. In this case the city of Geneva has accepted the chartered powers from the state, and by its own consent has assumed the responsibility of constructing the conduits. In the execution of that power it owes a duty to the defendant and the public to construct suitable conduits, and to keep them in repair, and to give to the company reasonable facilities and protection. The municipal authorities cannot arbitrarily fold their arms, and shut their eyes, and say that they will not perform that duty. In such a case the court has the power, and it is its duty when called upon, to review the acts of the board of public works to determine whether there has been an abuse of discretionary power by the board, and to compel a proper performance of that duty. People v. Otsego Co. Sup'rs, 51 N. Y. 407.

The fact that the board of public works has refused to grant permission to the defendant to construct its own conduits is wholly immaterial. It will be seen from the plain and unambiguous language of the act that the board is clothed with a discretionary power to either construct the conduits or compel the companies to construct their own conduits; and, having exercised that discretion in good faith, the defendant must acquiesce in its decision, and place its wires in the conduits prepared by said board.

I am unable to reach the conclusion, from the affidavits read upon this motion, that the conduits are imperfectly constructed, or that the board of public works, when the wires are placed in the conduits as directed, will not make suitable rules and regulations, and give the defendant reasonable facilities and protection in the use of such conduits.

The application, therefore, for a peremptory writ of mandamus, is granted.